UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

:

AMERICAN GREETINGS,                                :
CORPORATION, *et al.*,                             :
                                                   :          CASE NO. 1:09-cv-1056
                          Plaintiff,               :
                                                   :
vs.                                                :          OPINION & ORDER
                                                   :          [Resolving Docs. No. 7 & 13]
COOKIE JAR ENTERTAINMENT,                          :
INC., *et al.*,                                    :
                                                   :
                          Defendants.              :
                                                   :

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

      Defendants Cookie Jar Entertainment, Inc; Cookie Jar Entertainment (USA), Inc. f/k/a DIC

Entertainment Corp.; and Cookie Jar Entertainment Holdings (USA), Inc. f/k/a DIC Entertainment

Holdings, Inc. (collectively "the Defendants"), move this Court to dismiss this action pursuant to

Federal Rule of Civil Procedure 12(b)(6).  In the alternative, the Defendants ask this Court to transfer

the case to the United States District Court for the Southern District of New York under 28 U.S.C.

§ 1404(a).  For support, Defendants say that the parties agreed that any actions would need be filed

only in the Southern District of New York.  The Defendants alternatively move this Court to dismiss

Counts I and II of the Amended Complaint under Rule 12(b)(6), saying that American Greetings

cannot rescind two contracts because it has ratified the first and previously litigated the validity of

the second. [Doc. 13.]

Case No. 1:09-cv-1056
Gwin, J.

This case concerns licensing rights and ownership to Strawberry Shortcake, a well-known children's character developed by Plaintiff American Greetings. In a four-count Amended Complaint, the Plaintiffs American Greetings Corp. and Those Characters From Cleveland (collectively "American Greetings"), seek: (1) rescission of a 2008 Settlement Agreement between the parties, (2) termination of a 2001 License Agreement between the parties, (3) in the alternative, enforcement of certain "drag along" rights under a 2008 Letter Agreement between the parties, and (4) in the alternative, damages for breach of the 2008 Letter Agreement.[1/] [Doc. 8.]

At issue is the applicability of various forum selection clauses contained in the agreements between the parties. The Defendants say this action arises out of the 2008 Settlement Agreement and Letter Agreement that contain New York forum selection clauses. Because of these forum selection clauses, the Defendants say this Court must dismiss the case or transfer the venue of this case. [Doc. 13-1.] In response, the Plaintiffs say that the focus of this action is the 2001 License Agreement and a Binding Term Sheet Agreement that contain Ohio forum selection clauses. Independently, the Plaintiffs say that enforcement of the New York forum selection clauses would be unreasonable. [Doc. 18.]

In addition, the Defendants seek dismissal of Counts I and II of the Amended Complaint. The Defendants say that this Court must dismiss Count I—seeking rescission of the 2008 Settlement Agreement—because the Plaintiffs have ratified the Agreement by attempting to enforce the 2008 Settlement Agreement after knowing of the Defendants' allegedly fraudulent conduct. In addition,

---

[1/] The Plaintiffs have separately filed a Rule 60(b) Motion to Vacate the dismissal of the 2008 case leading to the Settlement Agreement. [1:08-cv-1533, Doc. 28.] Because that case and motion are before the Honorable Judge Solomon Oliver, Jr., U.S. District Court for the Northern District of Ohio, the Plaintiffs have further filed a Motion to Transfer that case to this Court. [1:08-cv-1533, Doc. 29.]

Case No. 1:09-cv-1056
Gwin, J.

the Defendants say that this Court must also dismiss Count II—seeking termination of the 2001

Licence Agreement—because the claim is barred by the Settlement Agreement and res judicata.

[Doc. 13.]  The Plaintiffs counter that rather than ratifying the 2008 Settlement Agreement, they

have merely attempted to mitigate the damages caused by the Defendants' actions.  Further, the

Plaintiffs say that Count II raises new claims and that res judicata does not bar the claims at least

until a Rule 60(b) motion to vacate the prior settlement is decided. [Doc. 18.]

For the reasons discussed herein, the Court **DENIES** the Defendants' motion to dismiss,

motion to transfer venue, and motion to dismiss Counts I and II.

## I.  Legal Standards

This Court considers the motions to enforce the forum selection clause under 28 U.S.C. §

1404(a) and the motion to dismiss on the merits under Rule 12(b)(6).

*I.A. Motion to Transfer Venue*

Although the Defendants cite *Langley v. Prudential Mortgage Capital, Co., LLC*, 546 F.3d

365, 369-71 (6th Cir. 2008) (Moore, J., concurring), for the proposition that this Court may enforce

the forum selection clause through Rule 12(b)(6), the Sixth Circuit has not actually decided the issue.

*See Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 371 n.2 (6th Cir. 1999) (noting outstanding

debate among circuits whether dismissal pursuant to Rule 12(b)(1), (b)(3), or (b)(6)  is most

appropriate).  In fact, although the court in *Security Watch* upheld the dismissal pursuant to "Rule

12(b)" generally, it provided no analysis as to why this Rule governed, nor could it, as explained

below.

A party bringing a Rule 12(b)(6) motion asserts that the plaintiff has "failed to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Essentially, Rule 12(b)(6) allows the

Case No. 1:09-cv-1056
Gwin, J.

defendant "to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  Stated another way, "[t]he purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, . . .." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).

In contrast, § 1404(a) focuses not on the merits of the claim, but on the proper venue for the dispute.  Section 1404(a) empowers courts to weigh competing interests and ultimately decide whether a lawsuit properly brought in one district should nevertheless be tried  in another.  Rather than look to the well-pleaded complaint, courts examine other evidence of convenience, public interest, and even the ends of justice. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) ("Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at a place called for in the particular case by considerations of convenience and justice.").

When asking the Court to enforce a forum selection clause, the defendant invokes the concerns and purposes of § 1404(a), not Rule 12(b)(6).  In seeking to enforce such a clause, the defendant does not say that the Plaintiff could prove no set of facts that could support a verdict.  Moreover, the defendant does not argue lack of jurisdiction or improper venue.[2]  Instead, the defendant merely says that the plaintiff's claims, whatever their merit, belong elsewhere.  This contention aligns squarely with the purposes of § 1404, not Rule 12(b)(6).

In addition, the Supreme Court provided explicit direction for considering a forum selection

---

[2]In fact, when jurisdiction and venue are otherwise proper, a defendant *cannot* bring a Rule 12(b)(1) or (b)(3) motion to enforce a forum selection clause. *See Kerobo v. Sw. Clean Fuels Corp.*, 285 F.3d 531, 534-35 (6th Cir. 2002).

Case No. 1:09-cv-1056
Gwin, J.

clause in *Stewart Org., Inc., v. Ricoh Corp.*, 487 U.S. 22, 32 (1988) (holding that § 1404(a) governed the district court's decision whether to give effect to the parties' forum selection clause). In contrast to the vague and largely conclusory assertions of the Sixth Circuit and other courts of appeals regarding using Rule 12(b)(6) for venue issues, *Stewart* presents both a well-reasoned foundation and thorough framework for reconciling a plaintiff's filing in one forum and her prior agreement to file in another.

Therefore, considering the guidance of the Supreme Court and the contrasting purposes of Rule 12(b)(6) and § 1404(a), this Court finds that § 1404(a) provides the appropriate vehicle for considering the forum selection clause in this case. *See Mind-Peace, Inc. v. Pharmacon Int'l, Inc.*, No. 206CV832, 2006 WL 2849811, at *2 (S.D. Ohio, Oct. 2, 2006) (concluding that dismissal to enforce a forum selection clause under Rule 12(b)(6) is not appropriate and instead focusing on whether to transfer venue).

In considering a motion to transfer venue based on § 1404(a), this Court "weigh[s] a number of case-specific factors such as the convenience of the parties and witnesses, public-interest factors of systemic integrity, and private concerns falling under the heading 'the interest of justice.'" *Kerobo v. Sw. Clean Fuels Corp.*, 285 F.3d 531, 537 (6th Cir. 2002) (citing *Stewart*, 487 U.S. at 31). Moreover, if applicable, the forum selection clause "should receive neither dispositive consideration . . . nor no consideration . . . ." *Kerobo*, 285 F.3d at 538.

*I.B. Motion to Dismiss*

In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's legal conclusions as true. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

-5-

Case No. 1:09-cv-1056
Gwin, J.

Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires that a complaint "contain . . . a short plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 129 S. Ct. at 1949 (citations removed). Rule 8 does not require "detailed factual allegations, but it requires more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citations and internal quotations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility requirement is not a "probability requirement" but requires "more than a sheer possibility that the defendant has acted unlawfully." Id. The Supreme Court has explained the line between possible and plausible: "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (citations and internal quotations omitted).

Although a court generally confines its review to matters contained in the Complaint, a court presented with a Rule 12(b)(6) motion "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein. Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008) (citing Amini v. Oberlin Coll., 259 F.3d 493, 502 (6th Cir. 2001)).

## II. Background Facts

Case No. 1:09-cv-1056
Gwin, J.

The case before this Court arises out of nearly ten years of dealings between the parties and their subsidiaries. At issue are a 2001 Licensing Agreement, in which Plaintiff American Greetings licensed certain intellectual property rights to Defendant DIC Entertainment Holdings n/k/a Cookie Jar Entertainment Holdings (USA) Inc., and a 2008 Settlement Agreement, in which the parties resolved a lawsuit relating to the License Agreement. In this case, American Greetings says that Defendant Cookie Jar fraudulently induced the 2008 Settlement Agreement. American Greetings now seeks to rescind that agreement along with the 2001 Licensing Agreement. Defendant Cookie Jar says that a forum selection clause in the parties' agreements requires this Court to dismiss the case or transfer it to the Southern District of New York. In addition, the Defendants say that Counts I and II of the Plaintiffs' Amended Complaint must be dismissed on their merits.

*II.A. The 2001 Licensing Agreement*

In 2001, Those Characters From Cleveland, Inc., a subsidiary of American Greetings Corp., entered into a licensing agreement ("2001 Licensing Agreement") with DIC Entertainment Corp. ("DIC"). [Doc. 13-4 at 1.] As part of this long-term agreement, American Greetings granted DIC marketing and distribution rights to Strawberry Shortcake, a cartoon character originally used by American Greetings in its greeting cards. [Doc. 13-4 at 1.]

The 2001 Licensing Agreement also contained two specific provisions relevant to the instant lawsuit. First, the agreement's forum selection clause provided that "any litigation . . . arising out of or relating to this Agreement shall be instituted only in a state or federal court in Cleveland, Ohio . . . ." [Doc. 13-4 at 31.] Second, the agreement's paragraph 34, an assignment limitations clause, prohibited the sale of DIC's stock or substantially of all of DIC's assets unless either Andy Heyward or Brad Brooks—executives at DIC—were employed with the new company. The 2001 Agreement

-7-

Case No. 1:09-cv-1056
Gwin, J.

gave American Greetings the right to terminate the agreement should Heyward and Brooks leave the new company.  [Doc. 13-4 at 29.]  This clause also prohibited the sale of DIC to a direct competitor of American Greetings.

*II.B. The 2008 Case and Settlement Agreements*

In June 2008, DIC's parent company, DIC Entertainment Holdings, Inc. ("Holdings"), entered into a proposed merger with a subsidiary of Cookie Jar Entertainment, Inc. ("Cookie Jar"). [Doc. 8 at 11.]  American Greetings sued Cookie Jar, DIC, and Holdings, saying the proposed merger violated the 2001 Licensing Agreement's assignment limitations clause because Cookie Jar was a direct competitor. [Case No. 1:08-cv-1533, Doc. 5.]

Prior to trial, the parties entered into a settlement agreement and release. [Doc. 13-2.]  In this 2008 Settlement Agreement, American Greetings and Cookie Jar agreed to dismiss the action, enter into a separate letter agreement, and enter into an amendment to the 2001 License Agreement. [Doc. 13-2.]  In addition to consenting to the Cookie Jar-Holdings merger, the 2008 Settlement Agreement provided that "any dispute or controversy arising under or related in any way to this Agreement will be adjudicated by a court of competent jurisdiction located in the State of New York." [Doc. 13-2 at 2.]

That same day, American Greetings and Cookie Jar entered into the 2008 Letter Agreement, which also contained a New York forum selection clause. [Doc. 13-3 at 9.]  If closed, this Agreement provided for Cookie Jar to pay $195 million in cash to purchase American Greeting's remaining intellectual property rights in Strawberry Shortcake, the Care Bears, and the Sushi Pack. [Doc. 13-3.] Cookie Jar and American Greetings agreed to close Cookie Jar's purchase by September 30, 2008. [Doc. 13-3 at 1.] The parties, however, conditioned Cookie Jar's obligation to complete its purchase

Case No. 1:09-cv-1056
Gwin, J.

upon Cookie Jar obtaining "financing . . . on terms and conditions that are commercially reasonable in the circumstances and consistent in all material respects with similar transactions, . . .." [Doc. 13-3 at 2-3.]

If Cookie Jar could not obtain financing to purchase American Greeting's interests in the properties by September 30, the 2008 Letter Agreement also provided a "shop period." [Doc. 13-3 at 6.] Under this provision, American Greetings could solicit third-party offers to purchase 100 percent ownership of the properties, including Cookie Jar's existing ownership rights. [Doc. 13-3 at 6.] This shop period would open September 30, 2008, and close March 31, 2009. [Doc. 13-3 at 6.] Any offers American Greetings received were to be evidenced by a "Binding Term Sheet." [Doc. 13-3 at 6.]

Finally, the 2008 Letter Agreement gave Cookie Jar a right to match any third-party offer for the properties.  Under the 2008 Letter Agreement the parties agreed to a "tag along/drag along" right as well as a matching right. [Doc. 13-3 at 6-7.]  First, under the drag along provision, if American Greetings entered an agreement with a third-party and closed the transaction within 75 days of its receipt, American Greetings could force Cookie Jar to transfer its existing ownership rights in the properties to the third-party purchaser. [Doc. 13-3 at 7.] Second, under the tag along provision, Cookie Jar could force the third-party purchaser to separately acquire Cookie Jar's rights. [Doc. 13-3 at 7.] Finally, under the matching right, Cookie Jar could match the third party's offer, creating a contract between American Greetings and Cookie Jar on the same terms as the Binding Term Sheet. [Doc. 13-3 at 7-8.]

In addition to the 2008 Settlement Agreement and the 2008 Letter Agreement, American Greetings and Cookie Jar also entered into an Amendment to the 2001 Licensing Agreement.

-9-

Case No. 1:09-cv-1056
Gwin, J.

Substantively, this Amendment substituted a completely new assignment limitations clause for paragraph 34 of the 2001 Licensing Agreement. [Doc. 13-5.] Moreover, the parties agreed that "all other provisions of the License Agreement are hereby confirmed and shall remain in full force and effect." [Doc. 13-5 at 3.]

*II.C. The 2009 Cases*

Cookie Jar failed to obtain financing by September 30, 2008, to complete its purchase of American Greeting's property.  After Cookie Jar did not complete the purchase, American Greetings began shopping the properties under the terms of the 2008 Letter Agreement. [Doc. 8 at 13-14.] On March 24, 2009, American Greetings received a Binding Term Sheet from MoonScoop SAS. [Doc. 8 at 14 & 13-8.] According to the Term Sheet, MoonScoop agreed to purchase the properties from American Greetings for $95 million. [Doc. 13-8 at 2.]  The Term Sheet also contained an Ohio forum selection clause. [Doc. 13-8 at 7.]

American Greetings notified Cookie Jar of this Binding Term Sheet that same day.  On March 30, 2009, Cookie Jar responded and said that it would match the MoonScoop offer. American Greetings confirmed this match by letter, noting that Cookie Jar's offer to match obligated Cookie Jar to the same terms that American Greetings and MoonScoop had agreed to. [Doc. 8 at 15.] Cookie Jar contends, however, that American Greetings did not offer Cookie Jar the same terms that it had offered Moonscoop.

After receiving some opportunity to match Moonscoop's offer, Cookie Jar again failed to obtain the financing it needed to complete its purchase.  Seemingly motivated by the uncertainly regarding the parties' rights under these various agreements, American Greetings filed this lawsuit

Case No. 1:09-cv-1056
Gwin, J.

in the Cuyahoga County Court of Common Pleas on May 6, 2009.[3/] [Doc. 1-1.] Cookie Jar removed

the case to this Court on May 7, 2009, and American Greetings filed an Amended Complaint on June

2. [Doc. 8.]

In addition, American Greetings made a Rule 60(b) Motion for Relief from Judgment before

the Honorable Judge Solomon Oliver, seeking to reopen the 2008 case. [Case No. 08-1533, Doc. 28.]

On July 2, 2009, American Greetings also moved Judge Oliver to transfer the 2008 case to this

Court. [Case No. 08-1533,  Doc. 29. ] The court has not ruled on either motion.

On August 11, 2009, MoonScoop sued American Greetings for breach of contract, a case also

currently pending before the Judge Oliver. [Case No. 09-1885, Doc. 1]. With its answer, American

Greetings also filed a third-party complaint against Cookie Jar, alleging the same cause of action as

in Count III of its Amended Complaint in this case. [Doc. 5.]

In the action before this Court, on June 19, 2009, Cookie Jar filed a motion to dismiss or

transfer venue. This Court now denies the motion for the reasons stated below.

### III. Analysis

Because a forum selection clause exists in this case, this Court undertakes a three-step

analysis in ruling on the motion to transfer venue.  First, this Court determines whether the parties

have entered into a valid forum selection clause that governs the instant dispute.  Second, if the

forum selection clause applies, this Court looks to whether it is nevertheless unenforceable for one

of the reasons articulated by the Sixth Circuit in *Security Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d

269 (6th Cir. 1999).  Finally, this Court engages in the balancing test of § 1404(a), considering the

---

[3/]The same day American Greetings filed this suit, Cookie Jar filed a Complaint against American Greetings
in the Supreme Court of New York, alleging breach of contract, tortious interference, fraud, and civil conspiracy. [Doc.
13-10.]

Case No. 1:09-cv-1056
Gwin, J.

forum selection clause as a factor only if the clause is valid and enforceable.[4/]

*III.A. Validity and Enforceability of the Forum Selection Clause*

As a general matter, federal law governs the validity of a forum selection clause. *Kerobo*, 285 F.3d at 534. Moreover, courts presume that a forum selection clause is valid. *Stewart*, 487 U.S. at 29-30. When confronted with multiple forum selection clauses in various agreements, courts have looked to which document "logically connects all the defendants to the plaintiffs . . .." *Friedman v. World Transp., Inc.*, 636 F. Supp. 685, 691 (N.D. Ill. 1986) (quoting *Adelson v. World Transp., Inc.*, 631 F. Supp. 504, 508 (S.D. Fla. 1986)); *see also Lulling v. Barnaby's Family Inns, Inc.*, 482 F. Supp. 318, 321 (E.D. Wis. 1980) (looking to forum selection clause, if any, in "basic contract between the parties").

In support of their motion to transfer venue, the Defendants say that this lawsuit centers on the Settlement Agreement and the Letter Agreement, both with New York forum selection clauses. Although the Plaintiffs essentially admit that Counts I and IV of the Amended Complaint focus on the 2008 Settlement Agreement and Letter Agreement, they counter that Counts II and III relate to the 2001 License Agreement and Binding Term Sheet, both containing Ohio forum selection clauses.

The Court finds these Ohio clauses equally valid and binding on the instant litigation. First, the 2001 License Agreement serves as the foundational agreement between the parties and the genesis of every count of the Complaint, either directly as in Count II, or indirectly as in Counts I,

---

[4/]The existence of a valid forum selection clause shifts the burden on a motion to transfer venue to the plaintiff and figures "centrally" into the Court's analysis under § 1404(a). *See, e.g., Braman v. Quizno's Franchise Co.*, No. 5:07CV2001, 2008 WL 611607, at*4-5 (N.D. Ohio, Feb. 20, 2008) (noting that presence of a forum selection clause negates presumption given to plaintiff's choice of forum and requires plaintiff to prove why enforcement and transfer is unreasonable under circumstances); *Travelers Prop. Cas. Co. of Am. v. Centimark Corp.*, No. 2:04CV0916, 2005 WL 1038842 (S.D. Ohio, May 3, 2005) (same).

Case No. 1:09-cv-1056
Gwin, J.

III, and IV.  Further, the 2008 Amendment to the License Agreement, entered into at the same time as the Settlement and Letter Agreements, explicitly reaffirmed the 2001 Agreement's Ohio forum selection clause.[5]  The Binding Term Sheet and its Ohio forum selection clause also bear significantly on the outcome of this case, as the details of American Greetings' contract with MoonScoop and Cookie Jar's "attempted" match underlie whether American Greetings may enforce its rights under the License Agreement.[6]

Therefore, the Court finds that no clear forum selection clause governs the whole of this dispute.  Accordingly, this Court will not discuss whether the clauses are enforceable under *Security Watch* and will give the clauses little if any weight in the § 1404(a) balancing.[7]

*III.B. Motion to Transfer Venue Under § 1404(a)*

In considering a motion to transfer venue based on § 1404(a), this Court "weigh[s] a number of case-specific factors such as the convenience of the parties and witnesses, public-interest factors of systemic integrity, and private concerns falling under the heading 'the interests of justice.'" *Stewart*, 487 U.S. at 31.  Because the Court finds the New York forum selection clauses inapplicable, it does not weigh them in the §1404(a) analysis.  Even if the Court did consider the clauses, however, they would not be dispositive and the balance would still favor denying the motion to transfer.

---

[5] In fact, under the "logical connection" and "basic contract" standards employed by other courts, the 2001 License Agreement with its Ohio forum selection clause would govern this action.

[6] Although the Court recognizes Cookie Jar's argument that it is a non-signatory to the Binding Term Sheet and never successfully agreed to it, the argument is not well taken. The only reason Cookie Jar provides for halting the match process is that American Greetings did not give Cookie Jar the same closing terms it had given to MoonScoop. Had American Greetings done so, Cookie Jar would have had no reason to dispute its match and instead would have been explicitly bound by the Ohio forum selection clause in the Term Sheet.

[7] *See Sylvester Material, Inc. v. John Carlo, Inc.*, No. 3:04CV7686, 2005 WL 1176054, *4 (N.D. Ohio, May 17, 2005) (noting that disputed forum selection clause does not favor transfer).

-13-

Case No. 1:09-cv-1056
Gwin, J.

*1. Convenience of the Parties and Witnesses*

The convenience of the parties and third-party witnesses weighs in favor of denying the motion to transfer.   None of the parties to this action resides in New York.  The Plaintiffs are all Ohio corporations located in Cleveland, while the Defendant Cookie Jar is a Canadian corporation located in Toronto, Canada, and Burbank, California. *See Van Dusen v. Barrack*, 376 U.S. 612, 645-46 ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.").   Moreover, the parties extensively negotiated and ultimately executed the agreements at issue in both Cleveland and Toronto, and much of the relevant documentary evidence remains there.  Although some of the potential witnesses in this case include New York-based investment bankers and financiers, this fact is not determinative, especially in light of the large number of witnesses and evidence located in Cleveland and Toronto.

*2. Public Interest and the Interests of Justice*

The public interest and interests of justice support denying the motion to transfer as well. Public interest factors include the issues of congested dockets, concerns with resolving controversies locally, and having the trial in a forum that is familiar with the state law that governs the case. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).  Relevant here, the Supreme Court has noted, "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)

The case before this Court is one of three cases pending in the Northern District of Ohio in some way focused on the 2001 License Agreement, 2008 Settlement Agreements, and the Binding

Case No. 1:09-cv-1056
Gwin, J.

Term Sheet.  Thus, transfer would result in a New York court hearing only a portion of the Amended

Complaint in this case, while Ohio courts heard the remaining portions and two additional related

cases.  Such a division of nearly identical cases could hardly serve the public interest and would

stand in direct contradiction to the principles of § 1404(a) as articulated in *Continental Grain*.[8/]

Moreover, because all the parties' agreements dictate that Ohio Law governs the case no

matter which court ultimately hears it, the public has an interest in having a court familiar with the

governing state law adjudicate the matter.  *See* In re Peregoy*, 885 F.2d 349, 352 (6th Cir. 1989)*

(upholding transfer of case from Tennessee under § 1404 where it was clear that "Texas law will

apply, that all of the title information is in Texas, that key witnesses are in Texas, and that both the

federal and state courts in Texas are already familiar with this matter" ); *see also* 15 Charles Alan

Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure § 3845*, p. 291 (2d

ed. 2002) ("[I]t generally is thought to be an advantage in having [governing state] law applied by

federal judges who are familiar with [that] law, and thus in trying the case in a district of the state

whose law is to govern.").

Finally, the citizens of Ohio, not New York, have a particular interest in the outcome of this

case.  Based in Cleveland, American Greetings draws much of its workforce from the state of Ohio

and its success or failure has direct economic impact on these employees.  *Cf.* Mind-Peace*, No.

2:06cv632, 2006 WL 2849811*, at *3 (considering in § 1404(a) analysis that plaintiff's business

focused on selling to self-insured employers in Ohio and that these employers had interest in

---

[8/]This factor alone would overcome the existence of even a valid  New York forum selection clause governing
the entire dispute. *See, e.g.,* Pike Elec. Corp. v. Graham*, No. CV060757, 2006 WL 4006130, at *3 (W.D. La. Nov. 14,
2006)* (granting motion to transfer to Texas despite valid Louisiana forum selection clause where related case based on
same transactions and occurrences was pending in Texas); *Magnavox Co. v. APF Elec., Inc., 496 F. Supp. 29 (N.D. Ill.
1980)* (refusing to transfer venue where three cases involving same patent were pending before court).

Case No. 1:09-cv-1056
Gwin, J.

resolution of case).

Therefore, this Court finds that none of the § 1404(a) factors weighs in favor of transferring venue to the New York and accordingly **DENIES** the motion to dismiss or transfer venue to enforce the forum selection clause.

*III.C. Motion to Dismiss Counts I and II*

Having determined that the case is properly in Ohio, this Court next decides whether to dismiss Counts I and II of the Amended Complaint for failure to state a claim. Because it finds that American Greetings has stated valid claims for relief under each count, this Court denies the motion to dismiss.

*1. Count 1: Rescission of the 2008 Letter Agreement*

Under Count I of the Amended Complaint, American Greetings seeks rescission of the 2008 Settlement Agreement, the Amendment to the License Agreement, and the Letter Agreement, based on fraudulent inducement. Specifically, American Greetings says that Cookie Jar falsely promised American Greetings that it would use "commercially reasonable efforts to obtain financing" to close the sale of properties under the 2008 Letter Agreement and further that Cookie Jar falsely stated it was "not aware of any reason that it would not be able to obtain financing for the transaction." [Doc. 8 at 16.]

In response, Cookie Jar says that American Greetings cannot rescind the 2008 Agreements because American Greetings ratified those Agreements by seeking to enforce the match rights and drag along rights in the 2008 Letter Agreement despite already knowing of the alleged fraud. [Doc. 13-1 at 12-13.]

Generally, under Ohio law, "the receipt and retention of consideration after knowledge that

-16-

Case No. 1:09-cv-1056
Gwin, J.

conditions precedent have been broken, constitutes a waiver of such conditions so as to withdraw them from the terms of the contract." *English v. Nat'l Cas. Co.*, 34 N.E.2d 31, 33 (Ohio 1941); *see also Meyers v. Hoops*, 140 N.E.2d 65, 68 (Ohio Ct. App. 1955) (holding that defendant with knowledge that he had been fraudulently induced into purchasing heating business could not rescind contract where he continued to substantially operate business). Thus, the law requires the party seeking rescission to first return any consideration or benefit received under the contract. *English*, 34 N.E.2d at 33.

In some situations, however, a party need not immediately return consideration or treat the entire contract as invalid. For example, in *City of Findlay v. Pertz*, 66 F. 427, 439 (6th Cir. 1895), the Sixth Circuit held that the plaintiff had not ratified a contract by continuing to use for two months several machines provided by the defendant. There, the plaintiff had alleged fraud and asked the defendant to remove the machines, but continued to use them in the meantime. Finding no ratification, the court noted, "Slight acts of use will not bar rescission." *Findlay*, 66 F. at 439.

Similarly, courts do not require immediate allegations of fraud where the injured party makes efforts to repair the goods provided or otherwise attempts to mitigate her damages. *See, e.g.*, *Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.*, 656 F. Supp. 49, 66 (S.D. Ohio 1986) ("Delay on the part of an injured party in exercising his right to rescind is not a waiver if it is caused by the pendency of repair efforts or assurances of repair."); *see also Globe Metallurgical, Inc. v. Hewlett-Packard Co.*, 953 F. Supp. 876, 882-83 (S.D. Ohio 1996) (holding waiver of fraud claim rule inapplicable where continued performance of contract results from parties' efforts to remedy alleged fraud).

Under these principles, this Court similarly refuses to hold as a matter of law that American

-17-

Case No. 1:09-cv-1056
Gwin, J.

Greetings has ratified the 2008 Letter Agreement.  First, American Greetings has received no consideration or benefit that it must first return to Cookie Jar.  Moreover, American Greetings' actions have not prejudiced Cookie Jar or caused Cookie Jar to detrimentally change its position.

In addition, American Greetings' actions represent mitigation, not ratification.  American Greetings spent most of the time after Cookie Jar defaulted on its right to purchase the Strawberry Shortcake properties shopping the properties, ultimately accepting a bid from MoonScoop for $100 million less than the price agreed to by Cookie Jar.

Given the lengthy history of dealings and negotiations between the parties,[9] as well as the nature of American Greetings' efforts to remedy the alleged fraud, this Court finds that American Greetings has not ratified the 2008 Agreements and **DENIES** the motion to dismiss as to Count I.

*2. Count II: Rescission of the 2001 License Agreement*

Finally, Cookie Jar says that Count II of the Amended Complaint—seeking rescission of the 2001 License Agreement—fails to state a claim.  In support of this argument, Cookie Jar contends that Count II merely reasserts claims resolved by the 2008 Settlement Agreement and that the doctrine of res judicata bars their re-litigation.  In response, American Greetings says that Count II raises a new claim and that American Greetings' pending Rule 60(b) motion to vacate the 2008 dismissal precludes res judicata from applying.

As an initial matter, "[a] voluntary dismissal with prejudice operates as a final adjudication on the merits and has a res judicata effect." *Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 542 (6th Cir. 2001); *see also Smoot v. Fox*, 340 F.2d 301, 303 (6th Cir. 1964) ("Dismissal of

---

[9] *See Cincinnati Gas*, 656 F. Supp. at 66 ("We refuse to find as a matter of law that a six-month delay, or even a three-year delay . . . given the Nature of the transaction, was unreasonable.").

-18-

Case No. 1:09-cv-1056
Gwin, J.

an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties."). Moreover, under the terms of Rule 60 itself, a Rule 60(b) motion "does not affect the judgment's finality or suspend its operation." Fed. R. Civ. P. 60(c)(2). Therefore, until decided, the Rule 60(b) motion does not limit the res judicata effect of the 2008 case and settlement. Thus, this Court examines whether res judicata bars Count II.

"The rules of res judicata actually comprise two doctrines concerning the preclusive effect of a prior adjudication, claim preclusion and issue preclusion." *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). Claim preclusion, or "true res judicata," forecloses litigation of a matter that has never been litigated if a court decides that it should have been advanced in an earlier suit. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). Issue preclusion forecloses re-litigation of a matter that actually has been litigated and decided. *Id.*

In its motion to dismiss, Cookie Jar's arguments draw support from both doctrines. As to issue preclusion, Cookie Jar says that the 2008 settlement decided a particular issue—whether a "DIC sale" occurred sufficient to trigger paragraph 34—that American Greetings cannot re-litigate in this case. [Doc. 19 at 12.] Regarding claim preclusion, Cookie Jar says that Count II asserts the same claim for relief as Count I of the 2008 case. [Doc. 13-1 at 15.] Both arguments fail.

First, issue preclusion does not apply in this case. "[S]ettlements ordinarily occasion no *issue preclusion* . . . unless it is clear . . . that the parties intend their agreement to have such an effect." *Arizona v. California*, 530 U.S. 392, 414 (2000); *see also* 18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4443, p. 265 (2d ed. 2002) ("[C]onsent agreements ordinarily are intended to preclude any further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented.").

-19-

Case No. 1:09-cv-1056
Gwin, J.

Here, the parties made no clear statement of intent to preclude further litigation of whether a "DIC sale" had occurred under the 2001 License Agreement.  Although American Greetings consented to the merger of DIC into a Cookie Jar subsidiary as part of the Settlement Agreement, this consent does not define the nature of the DIC-Cookie Jar transaction.  The parties simply never articulated whether paragraph 34 had been triggered or how it applied.  Instead, American Greetings only agreed that the merger, however characterized, could go forward.  Moreover, American Greetings' consent was given in consideration for Cookie Jar's payment of $195 million, or matching third-party offer, neither of which has occurred.  Thus, the 2008 Settlement Agreement does not preclude American Greetings from now litigating whether a "DIC sale" occurred.

Although issue preclusion does not apply in this case, res judicata does bar re-litigation of any claim that American Greetings could or should have raised in the 2008 case.  Specifically, in the Sixth Circuit, res judicata bars a new claim whenever there exists: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was – or should have been – litigated in the prior action; and (4) an identity of the causes of action. *Golden v. C.I.R.*, 548 F.3d 487, 494 (6th Cir. 2008).  Moreover, the party advocating preclusion bears the burden of showing that it applies. *See Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir. 2007) (holding that res judicata did not bar second lawsuit where defendant had not argued or made any showing that plaintiff could or should have raised claim in prior suit between parties).

Here, the 2008 dismissal operates as a final decision on the merits, and the parties in the 2008 case and this case are the same.  In addition, in the 2008 case, American Greetings alleged that DIC and Cookie Jar "breached and repudiated the [2001] Agreement by entering into the [Merger

Case No. 1:09-cv-1056
Gwin, J.

Agreement], which effectively transferred the stock and assets of DIC to Plaintiffs' direct competitor, Cookie Jar." [Case No. 08-cv-1533, Doc. 5 at 9.] In its 2009 Amended Complaint, American Greetings similarly says that the Defendants breached the 2001 License Agreement by "transferr[ing] beneficial ownership of 100% of the stock and assets of DIC to Plaintiffs' direct competitor, Cookie Jar." [Doc. 8 at 17-18.] Therefore, to the extent Count II of the Amended Complaint states that a breach of contract claim based on DIC's sale to a direct competitor, res judicata bars its re-litigation.

Res judicata does not bar Count II entirely, however, because Count II raises a claim that American Greetings did not and could not raise in the prior case. Specifically, American Greetings now says that Cookie Jar breached the 2001 License Agreement after the 2008 settlement when Cookie Jar stopped employing at least one of the DIC "key men" required under paragraph 34 of the Agreement.

American Greetings did not raise this independent ground for breach of the License Agreement in the 2008 case. Moreover, Cookie Jar does not argue that American Greetings could have or should have raised the issue. Instead, Cookie Jar says that the timing of the key men's departure does not matter. For claim preclusion purposes, however, timing does matter. *See, e.g.,* *Prime Mgmt. Co., Inc. v. Steinegger*, 904 F.2d 811, 816 (2d Cir. 1990) (holding that as to several breaches of a long-term contract, res judicata bars only those claims for breach that occurred prior to the first suit); *Alexander & Alexander, Inc. v. Van Impe*, 787 F.2d 163 (3d Cir. 1986) (prior judgment in favor of employee on covenant not to compete did not bar subsequent suit by employer claiming violation of same covenant based on employee's conduct after judgment); *Klein v. John Hancock Mut. Life Ins. Co.*, 683 F.2d 358, 360 (11th Cir. 1982) ("[Long-term continuing] contract can be breached intermittently during its term. Litigation or settlement will not automatically bar a

-21-

Case No. 1:09-cv-1056
Gwin, J.

later suit for a second, identical breach.")

In this case, Cookie Jar has failed to meet its burden of showing that American Greetings could have raised the "key man" claim in 2008. Therefore, res judicata does not bar that portion of Count II alleging breach of contract based on Cookie Jar's failure to employ either of the key men required by paragraph 34 of the 2001 License Agreement. Accordingly, this Court **DENIES** the Defendants' motion to dismiss Count II.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** the Defendants' motion to dismiss, motion to transfer venue, and motion to dismiss Counts I and II.

IT IS SO ORDERED.


Dated: November 3, 2009                    s/            *James S. Gwin*
                                           JAMES S. GWIN
                                           UNITED STATES DISTRICT JUDGE